at all, or arguments not to exceed 15 minutes per side. Mr. Percy Squire, for the appellant. Good morning, your honor. May it please the court. Your honor, my name is Percy Squire,  counsel for Peters Broadcast Engineering, the appellant. I would like to have 10 minutes for my initial argument and to reserve 5 minutes for rebuttal. Your honor, the issue in this case has to do with the operation of 18 U.S.C. section 1965, A, B, and D. The specific issue has to do with whether or not personal jurisdiction existed in the Southern District of Ohio over a New York corporation engaging in financing merchant cash advances throughout the United States. The district court dismissed this case based upon the theory that under 1965, notwithstanding the nationwide service of process language that's contained within that statute, that there needs nonetheless to be sufficient minimum contacts in the particular district where the action is brought in order to confer jurisdiction upon the district court to adjudicate the dispute. It is the position of appellant that the district court, although it has been characterized as the majority rule in this connection, did not properly interpret 1965 specifically. Because notwithstanding the limitation under 1965, A, to a particular district where a defendant may be found or continuously engages in business, 1965, Delta makes reference to any district where the defendant may be found. We have to think that Congress found some purpose in the four parts of the statute, right? Your honor. Yes, it's true there is a section that says thou shalt go wherever one prefers, but there has to be a purpose for those four parts, right? That is correct, your honor. Okay, so as I get it, the majority view analyzes the four parts and makes sense of them as a group. And your argument is, no, we go with D. Your honor, my argument is the majority rule does not make sense of all four parts of the statute. Your argument is the rule adopted by the minority of the circuits is the better reading of the statute. Your honor, our argument is actually that the minority view is the better. That's what I thought I just said. Oh, I'm sorry, judge. Maybe I misstated it. No, you said it. I'm sorry, judge. I apologize. That's my hearing. No, my argument, your honor, is that the minority view. I apologize, judge. I didn't hear you properly. My argument is that the minority view is the more appropriate view, specifically because to adopt the majority view, you cannot reconcile subparagraphs A of the statute with subparagraph delta D. I think you can, but can I ask you back to Judge Cook's question about D being superfluous? What does the phrase all other process mean using the word other in 1965D under your reading of the statute? What is the other referencing? What the other references, your honor, is that any process that is not covered by A or B. What that means is that where you don't have sufficient minimum context in that particular district or under B where you are not dealing with a bootstrap defendant or a defendant who is brought in because there is jurisdiction over a defendant. Let me give you one theory of how to read it together. Did you read Judge Easterbrook's opinion in the Seventh Circuit? Yes, your honor. Okay, so he says A is venue. Yes, your honor. And under A, if A is venue, under A you have to use Rule 4 to get service on one person, one defendant. Right. Then Rule B gives you nationwide service of process once you have the other defendant. Now I know he doesn't reference D, but Corey does, the Tenth Circuit case. Right. And in Corey, what they talk about, what I understand them to talk about in D, is the other process provided by Rule 4.1. So service of injunctions, service of things like that. Why isn't that a way to read the statute? Every provision now has effect. C is not at issue here, that's just the subpoenas. Why wouldn't that work and give a reading that gives every provision effect? Because it would be inconsistent with the broad remedial interpretation that's been given to the RICO statute, your honor. Can I ask you why that's so? Because you would get nationwide, you would get a venue in the United States always, at least one, that allows for an action to be brought against all defendants, which is the purpose of RICO. You want one piece of litigation. Yes, your honor. And you would always have that. Yes. The problem with that, Judge, is that to the extent that you run into a situation like we have here, where it's our contention that the activity of this defendant actually does impact the Southern District of Ohio because of the nature of the business in which they're engaged, that you would, in effect, limit subparagraph D. Then why not, I'm sorry to interrupt you, why not serve him under Rule 4 then? Your honor, because he has to have sufficient minimum contacts in the International Shoe versus McGee context. RICO was intended to get away from that. Well, what case says that? Your honor, the statute says it. That's where we are. You need that reading, you need, as Judge Gibbons said, the minority reading of the law, the minority group of cases reading of the law to get to win in this case. Your honor, clearly that is our argument. Our argument is that it's the majority view that is the correct interpretation of the statute. And we base that primarily upon the fact that in order to give meaning to D, outside of limiting D to the service of other papers separate from the summons and complaint, D would have no relevance. You agree my reading gives it meaning. I agree Judge Eastbrook didn't say anything about it, but my reading gives it meaning. Your honor, your reading certainly would give meaning to subparagraph D, but it would limit it to matters outside the summons and complaint, and it's our position that the statute is not that limited, and that would be inconsistent with the broad remedial purposes of RICO. But the title is venue and process, and this is other process, so why wouldn't that be, I mean, why wouldn't that fit within the statute? Again, your honor, it would be inconsistent with the broad remedial interpretation of the statute. I'm not suggesting, Judge, that that would not be a manner in which the statute could be interpreted. But here we have a classic example of why RICO should be interpreted in the way that we are alleging. Here we have a defendant who, for lack of a better word, is a bad actor. They're engaged in national commerce. They're marketing over the Internet and through brokers, and here we have, although we didn't get to the merits, unfortunately. Your characterization of your adversary can't influence our interpretation of the statute, can it? No, Your Honor, but it goes to the reason the statute is created and the reason the statute exists. I understand that my characterization goes to evidence that's not before this court, but what I'm saying, Judge, is this is an effort by Congress to reach individuals who would otherwise not be subject to responding for their conduct. Here we have a defendant that filed multiple false affidavits in multiple jurisdictions. That we contend the Southern District of Ohio have authority to determine their rights and liabilities to exercise jurisdiction because of the fact that D provides for exercising jurisdiction over them under these circumstances. Here we have a defendant that obtained a judgment making a representation that Peters Broadcast Engineering was either present or engaging in business in the state of New York, filed those affidavits in New York and Indiana. When we sued them in the Southern District of Ohio, they filed an affidavit stating that the person whose affidavit they got their original judgment on was not their officer or employee. All of these things combined in our vision, in our view, to create a basis to allege the predicate acts to bring a recall claim. I'm sorry, Judge. You have your five minutes for rebuttal. I'm sorry, Judge, and I'll continue when the court permits it. Thank you. Mr. Lefevre? Mr. Lefevre. Good morning and may it please the court. Jared Lefevre, Eastman & Smith on behalf of the defendants at Police 24 Capital and Jason Sankoff. The trial court properly dismissed this case for lack of personal jurisdiction. The defendants are a New York limited liability company and a Florida citizen. The plaintiff is an Indiana corporation that's headquartered in Fort Wayne, Indiana. There's absolutely no connection to the Southern District of Ohio in this case. Outside of the personal jurisdiction issue, with respect to our clients, it's plainly an improper venue as Mr. Squire's reply brief. What was the proper venue in order to successfully restrict the filing of these affidavits, etc.? What do you say the proper venue was? Well, as Mr. Squire points out, there was litigation between these parties in the state of New York in which Peter's broadcasting attempted to vacate a judgment. It had the opportunity to litigate the validity of that judgment in the state of New York to appeal from that judgment to the extent there was additional disputes that were not resolved by that particular litigation. The contract itself places a venue in the state of New York where 24 Capital is an organized limited liability company. So Peter's broadcasting could have and should have brought this case to the extent it has any merit in the state of New York as part of the party's contract. Is Mr. Percy right to say your company operates in 50 states, filing cases? The 24 Capital does advertise on the Internet just like every other company does. It does fund – I can't speak specifically to has it funded merchant cash advance agreement in every single state in the United States. I don't know the answer. This is correct to tell the court that it's a multi-state Internet. I didn't know that it was Internet advertising, but Internet is your real grounds for making your business work. That is true, Your Honor. There's a website that people can interact with and apply for finance agreements that our client provides. However, in this particular case, there's no contract related to the Southern District of Ohio. The plaintiff in this case is an Indiana resident. So the transaction has absolutely no connection whatsoever to the state of Ohio. And getting back to just the RICO analysis, the purpose of the venue provision is, as Judge Thapar pointed out, to have the RICO case take place in one case. And the idea is find one defendant which you can serve with process under Rule 4. Could they have served your client under Rule 4? I'm sorry? Could they have served your client under Rule 4? Absolutely, Your Honor. They could have commenced an action and served him with process – or served it with process where it is or Mr. Sankoff with process where he is in Florida or New York. Commenced the action there and then joined in either Mr. Sankoff or 24 Capital, whoever the other defendant would be in that venue. So they could have brought it in Florida or New York? Correct. They could have commenced the action there. I think you run into the venue issue with respect to the contract. I was discussing the other. But for purposes of jurisdiction, certainly, there would have been jurisdiction in New York or in Florida. And that's where this case could have and should have commenced. And that, to your point, Judge, the majority approach does give meaning to every subsection of the statute. If you rely on just D to say you can sue anybody anywhere, B has absolutely no meaning. Is that right? Because could you read A and B like you read 1391B3, the venue statute? And so could I read A and B as both venue provisions and then have D be the jurisdictional provision? I think the problem with that analysis, Your Honor, is that you would be avoiding the ends of justice issue that B puts in. And I think the purpose of that language is to address the due process consideration, which is fundamental to jurisdiction. Is it fair to bring this particular defendant into this courtroom? Is it constitutionally fair? Is it overly burdensome to hail somebody into a far-flung floor? Whereas if there's multiple defendants connected to a single RICO conspiracy and there's jurisdiction over one of those defendants, it's less unfair, I think Congress made the determination I think appropriately so, it's less unfair to bring the co-conspirators into that case for purposes of judicial efficiency and the broader medial purpose that Mr. Squire was discussing earlier. There's less of a constitutional concern of bringing those defendants into their non-resident forum to litigate the whole case. Another way to think of ends of justice is as a venue provision. If you have ten defendants, one in Alaska, nine in D.C., maybe the ends of justice promote that that case be brought in D.C. venue-wise over Alaska, even though you would have jurisdiction in both. Why can't I read it that way and read it more as a venue provision? I think you can read it that way. I think you then run into the problem of, well, what does other process under D mean, as you pointed out before? And I think you correctly point out that other process has to mean something other than summons or subpoena. Summons is addressed by A and B, and subpoena is addressed by C. So as you point out, an injunctive order, something along those lines, outside of summons is the other process Congress is referring to in D. So I think that that approach, which has been adopted by the vast majority of circuits, is the correct approach to interpreting the statute. And to the extent the court wants to entertain another reading of the statute, this case is uniquely unsuited to do it, given the parties involved and the underlying merits of the case. It would be a different analysis if there was some defendant here that, of course- You say there is no Ohio defendant? There is no Ohio defendant whatsoever in this case. And there's no Ohio plaintiff either, and there's no Ohio contract. At best, I could tell there's merely an Ohio attorney, Mr. Squire, correct? You are correct, Your Honor. I think that Peter's broadcast- In fairness, I think Peter's broadcast is licensed as a foreign business in the state of Ohio, but other than that, I am not aware of any connection between the parties or the underlying transaction that has anything to do with the state of Ohio or the Southern District of Ohio. And to that point, the reply brief of the appellate even says if this case gets reversed, the court should instruct the case to be transferred to Indiana, which I suggest the plaintiff would agree that this case was commenced in the wrong form in the first place, whether a jurisdiction exists or not. I don't know that that's exactly- I think that's not exactly what that's saying. That's just saying it's just a play to get the case transferred as opposed to dismissed if we disagree with the appellant's position. And to save the appellant the burden of refiling in Indiana, that's how I'd read that. Well, I do too, Your Honor, but I think it suggests that this was a case that never should have been brought in the Southern District of Ohio and justifies the district court's decision to dismiss the case in the first instance. To call it an admission of error. That's fair, and I agree. I should not have characterized it that way. Unless the panel has any further questions, I don't want to belabor the point further. I think I've covered what I wanted to discuss with respect to the jurisdictional issue. Anything further? Thank you. Thank you, Your Honor. Your Honor, a couple of points further. With respect to Judge Depar's point concerning construing subparagraph D to apply to matters outside of the summons and complaint. Injunctions and things of that nature. I would just say, Your Honor, that once jurisdiction is perfected over a party, it would not be necessary to have a separate statute to authorize the issuance of subsequent process. So that would mean that subparagraph D or something like that would be required in practically every case. Because once the court has jurisdiction, you can always issue the other process. Here, this is dealing with the case subparagraph D where jurisdiction is the issue. And there it says all other process may be served in any district where there is a continuous course of business. And consistent with this interpretation is the Supreme Court's opinion in Ford Motor Company v. Montgomery 8th Judicial District. Where it was determined or it was alleged by Ford Motor Company that they shouldn't be subject to jurisdiction where the case was brought because there weren't sufficient minimum contacts. And the Supreme Court said that because of the nature of their systematic business, because of what Ford Motor Company does nationally, it was consistent with due process considerations to permit them to be sued where that action was brought. This is similar to this company. This company operates through the internet, through brokers, all over the United States. The contact with Ohio had to do with the reason Mr. Peters was attempting to borrow this money from them, this was a merchant cash advance, was because he was involved in the 5G rollout nationally. So even though he was based in Indiana, he was involved in building cell towers everywhere. Indiana, Michigan, Ohio, and so forth. So this financing was used to engage in the 5G rollout not only in Indiana or New York, but everywhere where Peters Broadcast was operated. 24 Capital in this instance was analogous to what the Ford Motor Company was in Ford Motor versus 8th Judicial District. The other point that I just want to make, Judge, is that to the extent that the court adopted the majority view here, our primary argument against that has to do with the fact that adopting the majority view renders subparagraph D as meaningless. And that doesn't give effect to every provision in the statute, and that would be contrary to standard and conventional statutory interpretation. I have nothing further, Your Honor, unless the court has questions. I have one more. Yes, Your Honor. You had a judgment, a confession of judgment in New York. Yes, Your Honor. And that was, counsel refers, your friend referred to that as unsuccessful in some way. That you were, that it was an attempt to settle all cases or no? What happened, Your Honor, there was a confession of judgment in New York entered on two grounds. When these merchant cash advances, and I didn't get into all the problems with characterizing this as a merchant cash advance rather than an installment loan. It was not as it was characterized in Mr. Peter's accounts receivable financing. This turned out just to be a loan where they took a certain amount of money every day, irrespective of receivables that came in, as was represented in the initial contract. To the extent that there was a judgment taken, it was based upon the affidavit of this Mr. Sankoff and the affidavit signed by Mr. Peters when he signed the original contract. Those confessions are signed in advance. Then, if a default occurs, the confession by the borrower is filed along with the affidavit of the employee of the finance company. It's not a confession of judgment with respect to the RICO claim. No, Your Honor, no, not the RICO claim. It was with the underlying contract on the financing. But here we had the unusual development of when there was an attempt made to vacate it. 24 Capital argued that the person that filed the actual affidavit wasn't their employee. So that's why I'm saying this was a case where, while I respect what Judge Gibbons said about not to mischaracterize the defendant, but this was a case where the defendant filed multiple false affidavits in multiple courts. And this is the type of activity and the type of actor that RICO was intended to go after. We thank you both for your arguments. We'll consider the case carefully. Thank you very much, Your Honor. I believe there are no other cases to be argued, and so the court may adjourn court. This honorable court is now adjourned.